EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

FILED
JAN 17 2018
PATRICK KEANEY
Clerk, U.S. District Court
By_____
Deputy Clerk

IN THE MATTER OF THE SEARCH OF
CONTENTS OF STORED ELECTRONIC
COMMUNICATIONS FOR VERIZON
WIRELESS CELLULAR TELEPHONE NUMBER
(918) 575-8284

Case No. MJ-18-006-KEW

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of New Jersey *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 21, United States Code, Sections 846 and 841(a)(1), and the application is based on these facts:

☒ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
JOHN MORRISON
DEA TFO

Sworn to before me and signed in my presence.

Date: January 17, 2018

City and state: Muskogee, Oklahoma

_____
*Judge's signature*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR STORED WIRE AND ELECTRONIC COMMUNICATIONS

I, Agent John Morrison, being duly sworn deposes and says:

## AFFIANT'S TRAINING AND EXPERIENCE

1. I have been a Peace Officer since January of 2001. I began my career with the Overland Park, Kansas, Police Department and worked there as a certified Peace Officer until January of 2004. I then moved to the Muskogee, Oklahoma, Police Department in January of 2004, and worked there as a certified Peace Officer until March of 2012. I am currently employed by the Oklahoma Bureau of Narcotics and Dangerous Drugs Control (hereinafter OBNDD) as a full-time Peace Officer and Narcotics Agent and I have been so employed since March 19, 2012. Currently, I am assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO).

2. While working as a certified Peace Officer, I have spent more than eleven years working in patrol, and I am currently a narcotics investigator with more than five years of experience in this area. In addition to those duties, I have served as a member of the Muskogee Police Department's Special Operations Team and as a Field Training Officer. In 2007, I earned an instructor certification through C.L.E.E.T. (Council on Law Enforcement Education and Training), and I am currently an adjunct Defensive Tactics Instructor.

3. I have attended over 1,200 hours of continuing education and training during my law enforcement career. I have attended training specific to the investigation of illegal drug offenses provided by C.L.E.E.T., OBNDD, DEA, the Midwest Counterdrug Training Center, the Muskogee Police Department, and AONE (Association of Oklahoma Narcotic Enforcers). I have participated in courses relating to narcotics investigation such as Undercover Survival, Narcotics Air Assault School, the OBNDD Narcotics Investigators School, Criminal Interdiction, and the search of electronic devices.

1

4. I have conducted hundreds of investigations involving drug crimes to include the unlawful manufacturing, distribution, possession of controlled dangerous substances and conspiratorial activity related to the same. During my career, I have participated in hundreds of interviews of victims, suspects, arrestees, witnesses, cooperating individuals, and informants. Through these interviews, I have been informed of the various aspects/practices related to the regular activities of the illicit drug business and the operations related thereto. I have written, planned, and executed search warrants, and have testified under oath in court. Through this training and experience, I have become especially familiar with the techniques and operations of those involved in the drug trade and their day-to-day activities.

5. My experience includes, but is not limited to, patrol, investigations, conducting physical surveillance, and executing search warrants relating to a myriad of offenses including drug crimes. I have also acted in an undercover capacity where I have purchased drugs and engaged in hand-to-hand transactions with drug dealers. I have consulted with other experienced officers in narcotics investigations, and I have worked with other local, state, and federal law enforcement agencies.

6. I have been the case agent in the investigation of large scale drug conspiracies involving the distribution of hundreds of pounds of methamphetamine. During those investigations, I have written, assisted in the preparation of, and executed hundreds of search warrants, pen registers, and I have received authorization from the Oklahoma Court of Criminal Appeals to conduct wire intercepts of cellular telephones.

## **DESCRIPTION OF ITEMS TO BE SOUGHT/SEIZED**

7. I seek a search warrant ordering Verizon Wireless to provide stored wire and electronic communications for the following phone numbers:

a) (479) 238-4345

b) (918) 410-6930

c) (479) 228-0459

d) (918) 575-8284

e) (918) 575-8127

f) (918) 575-8532

**PROBABLE CAUSE AS IT RELATES TO THE TARGET PHONE NUMBERS**

8. This affidavit is a product of an ongoing investigation into the **Waylon WILLIAMS** Drug Trafficking Organization (DTO.) On July 28, 2017, **WILLIAMS** was arrested during the execution of a search warrant at his residence located at Rural Route 3, Box 1455, Stilwell, Oklahoma, which is located within the Eastern District of Oklahoma. During a search of the residence and curtilage, approximately 466 grams of a white rock like substance believed to be methamphetamine was found. The suspected methamphetamine was located in the yard of the residence approximately 350 feet southwest of the residence and was found inside a box. Also located during the execution of the search warrant was a substance believed to be marijuana, drug paraphernalia used to ingest narcotics, cellular phones, and approximately 50 firearms. As a result of the search warrant, **WILLIAMS** was placed under arrest and was transported to the Adair County, Oklahoma, jail. **WILLIAMS** posted a bond and was released with charges pending in Adair County District Court.

9. On September 27, 2017, the United States District Court for the Western District of Oklahoma entered an order authorizing the interception of oral and electronic communications over cellular phone (405) 875-6203, believed to be utilized by **Cesar ALZUARTE**. **ALZUARTE** is the target of an investigation being conducted by the Drug Enforcement Administration (DEA),

3

Oklahoma City Office. During the investigation, **ALZUARTE** has been identified as a methamphetamine distributor who sells methamphetamine in pound quantities. During the interception period of the cellular phone utilized by **ALZUARTE**, communications were intercepted between **ALZUARTE** and cellular phone number **(918) 718-4845**. From the intercepted communications, law enforcement believed **ALZUARTE** to be a source of supply of methamphetamine for the user of cellular phone **(918) 718-4845**. During the intercepted communications, **ALZUARTE** agreed to meet the user of cellular phone **(918) 718-4845** in Stilwell, Oklahoma, to pick up what investigators believe to be approximately $24,000 to $25,000 in United States Currency. On October 3, 2017, DEA Agents and TFOs conducted physical surveillance of **ALZUARTE** and his wife, Monica **BOJORQUEZ**, and followed them from Oklahoma City, Oklahoma, to the Walmart parking lot in Stilwell, Oklahoma, where **ALZUARTE** and **BOJORQUEZ** met a white male who was driving a black Dodge Charger with Oklahoma License Plate EIU 074. A registration check of the license plate showed the vehicle to be registered to **Waylon WILLIAMS** with an address of Rural Route 3, Box 1455, Stilwell, Oklahoma 74960. From a driver's license photograph I was able to identify the white male that **ALZUARTE** and **BOJORQUEZ** met with as **Waylon WILLIAMS**. From the physical surveillance in conjunction with the intercepted communications between **ALZUARTE** and **WILLIAMS**, I believe the user of cellular telephone number **(918) 718-4845** to, in fact, be **Waylon WILLIAMS**.

10. On October 11, 2017, DEA Special Agent Matt Niles and I drove past the residence located Rural Route 3, Box 1455, Stilwell, Oklahoma 74960, which is located in the Eastern District of Oklahoma. As we drove past the residence SA Niles and I observed a black Dodge Charger parked in the driveway in front of the residence. The black Dodge Charger appeared to be

the same Dodge Charger that I observed in the Wal-Mart parking lot during the surveillance operation on October 3, 2017.

11. Between October 24, 2017, and October 26, 2017, DEA Agents in Oklahoma City intercepted additional communications between **ALZUARTE** and **WILLIAMS**. From those intercepted communications, Agents believed **WILLIAMS** would be traveling to **ALZUARTE's** residence in Oklahoma City to pick up an amount of methamphetamine. After those communications, members of the DEA-Oklahoma City Office attempted to conduct surveillance of **WILLIAMS** as he was traveling to **ALZUARTE's** residence. **WILLIAMS** was in the same black Dodge Charger in which he was observed on October 3, 2017. Surveillance of **WILLIAMS** had to be terminated because **WILLIAMS** was using a counter-surveillance driving tactic I know as a "heat run." A heat run is a method of driving to detect the presence of law enforcement following a suspect. A suspect will begin driving erratically at either high or low rates of speed purposely stopping in the middle of the roadway, and taking non-direct routes to locations. In the case of the mobile surveillance that was conducted on **WILLIAMS** on October 26, 2017, **WILLIAMS** began driving at rates well under the speed limit causing vehicles to have to pass him and would then make U-turns and begin driving in the other direction.

12. On November 23, 2017, I received authorization from Judge Ronald A. White, the Chief Judge for the United States District Court in the Eastern District of Oklahoma, to begin intercepting all wire and electronic communications from cellular phone **(918) 718-4845**, which is the cellular phone believed to be utilized by **WILLIAMS**. The intercept order was served to Verizon Wireless, the service provider for the cellular phone, and law enforcement began intercepting wire and electronic communications on November 27, 2017. The interception period lasted until December 26, 2017. On December 27, 2017, an extension for the interception of wire

and electronic communications was authorized and law enforcement began intercepting communications again on January 2, 2018. Currently law enforcement is still intercepting wire and electronic communications from the cellular phone utilized by **WILLIAMS**.

13. From the intercepted communications, it is apparent **WILLIAMS** is still actively distributing methamphetamine. During the interception period, **WILLIAMS** has been in communication with the phone numbers listed in Attachment A to this affidavit. These cellular phone numbers all have Verizon Wireless as a service provider with no known subscriber information. From the content of interceptions, surveillance, and other results of the ongoing investigation, it appears the users of the cellular phone numbers are possibly co-conspirators in the **WILLIAMS DTO** or have knowledge of it. From my training and experience, I know that Verizon Wireless maintains text messages and voicemails for a period of several days, ranging from three days to ten days. I believe the stored text messages and voicemails from the above-described numbers would allow law enforcement to further identify co-conspirators operating within the **WILLIAMS DTO**. I would submit that all of the text messages and voicemails spanning back several months would be relevant to this investigation. Consequently, I request text messages from the preceding thirty days; however, it is believed that this time frame will be greater than the length of electronic communications kept in storage by Verizon.

14. In December 2017, DEA Special Agent Matt Niles and I interviewed Megan Watkins (**WATKINS**) at the jail in Benton County, Arkansas, regarding the **WILLIAMS DTO** investigation. **WATKINS** told us that she had been to **WILLIAMS'** residence to purchase quantities of methamphetamine for a time period spanning over one year. **WATKINS** was able to identify where **WILLIAMS'** residence was at Rural Route 3, Box 1455, Stilwell, Oklahoma, She knew that the vehicle **WILLIAMS** drove was a black Dodge Charger, and she knew **WILLIAMS'**

cellular phone number was (918) 718-4845. During the interview, **WATKINS** said **WILLIAMS** told his customers to communicate with him over the phone in vague terminology and said he never wanted his customers to directly say they wanted to purchase methamphetamine from him. **WATKINS**, said that **WILLIAMS** has instructed methamphetamine customers and co-conspirators to send vague text messages asking if **WILLIAMS** is home or if they can come over if they need to meet with him to purchase methamphetamine. **WATKINS** told me that a message of this nature with no response from **WILLIAMS** is how **WILLIAMS** lets customers know that he is available for delivery of methamphetamine. **WATKINS** said that if **WILLIAMS** was not available to deliver, **WILLIAMS** would respond with a message telling the customer not to come to the residence.

## INTERCEPTED COMMUNICATIONS OF THE TARGET TELEPHONES COMMUNICATING WITH WILLIAMS

15. In the paragraphs below, I list individually the cellular phone numbers for which I am requesting stored electronic communications. In each case, I list the phone number, if the user has been identified, and a brief synopsis of some of the intercepted communications between the cellular phone number and **WILLIAMS**.

### CELLULAR PHONE NUMBER (479) 238-4345

16. Cellular phone number **(479) 238-4345** has no known subscriber with a service provider of Verizon Wireless. A search of Law enforcement databases during the investigation has identified a possible user of the cellular phone as Brianna **SMITH**; however, the identification is tentative. During the investigation, I have spoken with local law enforcement in Adair County, Oklahoma, who are familiar with **WILLIAMS**, and they believe **SMITH** is a methamphetamine distributor for **WILLIAMS**. During the wire intercepts of **WILLIAMS'**, cellular phone communications have been intercepted which lead Case Agents to believe **WILLIAMS** is a

methamphetamine source of supply for **SMITH**. On December 9, 2017, **WILLIAMS** sent an outgoing text message to **(479) 238-4345** believed to be used by **SMITH** that read "Just came to give you your part of what we had left. If u got company I will go." I believe the text message was in reference to **WILLIAMS** delivering an amount of methamphetamine to **SMITH**.

### CELLULAR PHONE NUMBER (918) 410-6930

17. Cellular phone number **(918) 410-6930** has no known subscriber with a service provider of Verizon Wireless. During the investigation, a search of the social media site Facebook, the cellular phone number was linked to an account for Jesse **CATRON**. During an interview with the **WATKINS**, she said **CATRON** had been sent to pick up money from her after a methamphetamine purchase. During the wire intercept of **WILLIAMS'** cellular phone, **(918) 410-6930** believed to used by **CATRON** has been intercepted communicating with **WILLIAMS**. On December 1, 2017, **(918) 410-6930 (CATRON)** sent **WILLIAMS** a text message saying "U around." On December 9, 2017, **(918) 410-6930 (CATRON)** sent a similar text message to **WILLIAMS** saying he would come by **WILLIAMS'** residence after he **(CATRON)** got off work. During the intercept of **WILLIAMS'** cellular phone, similar text messages have been intercepted from methamphetamine customers which surveillance has seen arrive at the residence. At least one of the customers has been arrested after leaving the residence with a quantity of methamphetamine in their possession. The communication was consistent with the direction **WATKINS** described to agents regarding how **WILLIAMS** has told customers to communicate with him.

### CELLULAR PHONE NUMBER (479) 228-0459

18. Cellular phone number **(479) 228-0459** has no known subscriber with a service provider of Verizon Wireless. During the investigation, a search of law enforcement databases

8

showed this phone number is believed to be utilized by Carl **CUSHING**. **CUSHING** was convicted in 2000 in the United States District Court for the Eastern District of Oklahoma, *United States v. Carl Alvin Cushing*, Case Number CR-00-15-FHS, for Possession with Intent to Distribute Methamphetamine and Possession of a Vehicle with Altered Vehicle Identification Number. On October 11, 2000, **CUSHING** was sentenced to 87 months imprisonment and 48 months supervised release. **CUSHING** was discharged from supervised release on July 7, 2008. On December 18, 2017, an audio call was intercepted between **WILLIAMS** and **CUSHING**. During the audio call, **WILLIAMS** said he was close to **CUSHING's** residence and asked if he could stop by for what Case Agents believe was the distribution of methamphetamine. I was conducting surveillance of **WILLIAMS** at the time of the intercepted call and observed **WILLIAMS** go to a residence that is believed to belong to **CUSHING**.

## CELLULAR PHONE NUMBER (918) 575-8284

19. Cellular phone number **(918) 575-8284** has no known subscriber with a service provider of Verizon Wireless. During the investigation, a search of the social media site Facebook showed the cellular phone number is linked to an account for Starla **SLINKER**. During the wire intercept of **WILLIAMS'** cellular phone, **(918) 575-8284** believed to be used by **SLINKER** has been intercepted communicating with **WILLIAMS** for what is believed to be the purchase of methamphetamine. On November 30, 2017, **(918) 575-8284 (SLINKER)** sent a text message to **WILLIAMS** stating, "Hey where are you ready to buy those balls lol". From training and experience, I know the term "balls" to be referencing an amount of methamphetamine. On December 11, 2017, **WILLIAMS** responded to a text message from **(918) 575-8284 (SLINKER)** where she told **WILLIAMS** she was on her way over to his residence by saying "I will leave it in my car on the front seat. Just leave the $ were it is. Im sick and going to bed." I believe that text

9

message is in reference to **WILLIAMS** leaving the methamphetamine he is going to sell **SLINKER** in his car so she can pick it up.

### **CELLULAR PHONE NUMBER (918) 575-8127**

20. Cellular phone number **(918) 575-8127** has a subscriber of Kendra **MORTON** with a service provider of Verizon Wireless. During the investigation, a search of the social media site Facebook showed the cellular phone number is linked to a social media account for Marvin **MORTON**. On November 30, 2017, **(918) 575-8127** believed to be used by **MORTON** sent a text message to **WILLIAMS** saying, "Hey man you care if I stop by it's marvin". On December 5, 2017, **(918) 575-8127 (MORTON)** sent a text message of "Are you around". On December 18, 2017, **(918) 575-8127 (MORTON)** sent a text message asking **WILLIAMS**, "Are you doing any good today". In my experience from previous wire intercept cases, I have heard the phrase "are you doing any good today" when someone is asking their source of supply if they have any methamphetamine for sale. On January 13, 2018, **(918) 575-8127 (MORTON)** had a similar message exchange with **WILLIAMS**. **MORTON** was arrested by Oklahoma State authorities after leaving **WILLIAMS'** residence and was in possession of a distribution quantity of methamphetamine.

### **CELLULAR PHONE NUMBER (918) 575-8532**

21. Cellular phone number **(918) 575-8532** has no known subscriber and a service provider of Verizon wireless. During the investigation a search of the social media site Facebook showed the phone number is linked to a social media account for Amber **KIRK**. On December 8, 2017, an audio call was intercepted in which **WILLIAMS** told **KIRK** that for the last 3 or 4 days he had been out "hustling" because he had deadlines to meet. **KIRK** responded by asking **WILLIAMS**, "Do you need it?" **WILLIAMS** went on to say the reason he called was to say that

his source of supply called and said he was close enough to having the amount of money he (**WILLIAMS**) needed, and they would meet on the following Tuesday. I believe that when **KIRK** asked **WILLIAMS** "Do you need it?" she was referring to money she owed him from the sale of methamphetamine.

### DELAYED NOTICE

22.     Pursuant to 18 U.S.C. §§ 2705(a) and 2705(b), I submit, based on the information contained in this affidavit and the attachments thereto, that immediate notice to Waylon **WILLIAMS**, Brianna **SMITH**, Jesse **CATRON**, Carl **CUSHING**, Starla **SLINKER**, Marvin **MORTON**, Amber **KIRK** or anyone associated with their criminal enterprise would cause potential flight from prosecution by **WILLIAMS**, the destruction of or tampering with evidence by individuals involved in this criminal organization and/or would seriously jeopardize the investigation. Therefore, the government requests delayed notice of 30 days. The notice and service will be executed pursuant to statute, unless further authorization for delayed notice is granted by the Court.

### CONCLUSION

In light of the foregoing, I believe that there is probable cause to conduct a search of the stored electronic communications of the Verizon Wireless Telephone Numbers listed in Attachment A for stored electronic communications that may be evidence of Title 21, United States Code, Sections 841(a)(1) and 846 – Possession with Intent to Distribute and Conspiracy to Distribute Controlled Substances as described in this affidavit.

_____
JOHN F. MORRISON
DEA Task Force Officer

Subscribed and sworn before me this __17th__ day of January, 2018.

_____
KIMBERLY E. WEST
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Verizon Cellular Telephone Number (918) 575-8284 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedmister, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Verizon Wireless**

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.  All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b.  All existing printouts from original storage of all of the text messages described above;

c.  All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from January 1, 2018, to present;

d.  All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e.  All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service

utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

 f. Detailed billing records, showing all billable calls including outgoing digits, from January 1, 2018, to present;

 g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from January 1, 2018, to present;

 h, Incoming and outgoing telephone numbers, from November 27, 2017, to present;

 i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

 j. All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving use of the subject telephone since November 27, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

 a. Evidence of the possession and/or distribution of controlled substances;

 b. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

      c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

      d.      Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

      e.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).